FRANCES CHMIELOWICZ, ALSO KNOWN AS FRANCES MILOWICZ, PLAINTIFF-RESPONDENT, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, DEFENDANT-APPELLANT.

Argued January 16, 1940—Decided March 16, 1940.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and PORTER.

For the plaintiff-respondent, *Paul Supinski* (*Isidore Hornstein,* of counsel).

For the defendant-appellant, *Drewen & Nugent* (*John Drewen,* of counsel).

The opinion of the court was delivered by

PORTER, J. The appellant appeals from a judgment entered in the Hudson County Court of Common Pleas on a verdict rendered by a jury in an action against it by the respondent on a contract of insurance in which she was the named beneficiary. The contract was contained in an insurance policy issued by appellant on the life of John Milowicz for $1,000 and which provided for double indemnity in the

event of the death of the insured by accident "directly and independently of all other causes of bodily injuries effected solely through external, violent and accidental means, of which, except in case of drowning or of internal injuries revealed by an autopsy, there is visible contusion or wound on the exterior of the body and that such death occurred within ninety days of the accident." The insured died on January 19th, 1935. The respondent alleges that his death was occasioned solely by bodily injuries caused by the accidental fall of the insured on the day of his death of which injuries there were visible contusions on the exterior of his body. Upon presentation of proof of death appellant paid the death benefit provided for in the policy but denied its liability for double indemnity for accidental death.

From the testimony it appears that the insured fell down the cellar stairs on the morning of January 19th, 1935, at his home and died there the evening of the same day. His wife, the respondent, and his son-in-law, who was a member of the household and is a physician, were in the kitchen from which he went into the cellar and both hearing the noise of the fall went to his assistance. She testified that she saw him "lying behind the stairs." Dr. Staciva, the son-in-law, says that he saw him in the act "of picking himself up, brushing himself off of some dust, and moaning and complaining of pain in his—over his left side of his chest." Dr. Staciva had him put in bed, gave him some medicine and rubbed his chest with linament. Dr. Loksa who had attended the deceased on previous occasions was called and came twice to attend him, once in the morning after Dr. Staciva had left the house and again in the afternoon. He testified that he found him in much discomfort and distress with complaints of pain in his left chest and forehead; that the pain in his chest was persistent; that when he saw him in the afternoon the symptoms were the same but that his condition was then "very favorable;" that he found abrasions on the forehead and left chest. Dr. Staciva, whose office was at the residence of deceased, further testified that he saw deceased at intervals when he return for his evening office hours, that he found that he had been resting comfortably but that in the evening

he again complained and was moaning so that he sent for a priest for the administration of the last rites of the church and that he died about nine o'clock. Both respondent and Dr. Staciva said that he had been in good health; that his work was that of a laborer at which he had worked for many years and that he had worked as such on the day before his death. Both attending physicians testified that in their opinions the death of decedent was caused by internal injuries sustained by the fall down the stairs.

The defense disputed that deceased had been in good health before the accident and adduced testimony that he had been suffering from a heart ailment and had received medical treatment for same. Dr. Lucynski testified for the appellant that he was called to the deceased's house on the night of January 19th, 1935, "in an emergency" and was told upon his arrival by Dr. Staciva that "his father had had an attack and had died. Would I go and see him?" He says that he examined the dead body and concluded from its appearance that death had been caused by a sudden heart failure. He does not recall discussing the cause of death with Dr. Staciva. He says that he told Dr. Staciva that because of its being a case of sudden death he would notify "the superintendent of identification, Mr. Rigley," and that being conducted to a telephone he telephoned Mr. Rigley and reported to him the death and in reply to Mr. Rigley's question as to his opinion as to the cause of death told him he thought it was heart failure. He also testified that he had been given no history of the case, knew of no bodily injuries and did not examine the body for wounds or abrasions.

The certificate of death, which the appellant introduced in evidence without objection, was not signed by the attending physician but by Dr. Marshak as assistant county physician—now deceased. He certified that he had investigated the circumstances attending the death and that in his opinion the cause of death was "syncope due to myocardial heart disease, patient fell down cellar stairs at ten A. M. but showed no external signs of injury." The source of his information was not shown. The respondent testified that he did not view the body nor discuss the matter with her.

It seems to us from a careful examination of the testimony that a jury question was presented on the question at issue; *i. e.,* whether the death was caused by accident within the provisions of the contract of insurance.

The appellant contends, however, that the testimony given by Drs. Staciva and Loksa to the effect that the cause of death was internal injuries caused by the fall should have been struck because it was based on surmise and speculation and that the court erred in allowing same over objection. That without that testimony no factual question was presented and a verdict for the appellant should have been directed as moved.. We think the argument to be without merit and that there was no harmful error by the trial court. Both these witnesses gave as their expert opinions, based on the previous good health of the deceased, the fall down the stairs, the symptoms of his injuries and their own observations, that the fall was the sole cause of death. That was competent testimony and it was for the jury to evaluate it together with such testimony as was adduced to the contrary and the proper inferences to be drawn therefrom. It was not incumbent on the respondent to cause an autopsy to be made nor to show otherwise what vital organs were injured and failed by reason of the injuries. It was enough to have established death by violent accidental cause where contusions or wounds were visible on the exterior of the body. Both witnesses in question clearly testified that in the absence of an autopsy they could not give the exact nature of the injuries. Nor do they attempt to do so, except when pressed on cross-examination. One then said that it "may have been" this cause or that and the other "surmised" that it might be this cause or that. Under the circumstances considering their direct testimony these questions could have elicited nothing but conjectural answers. These speculations were of course immaterial and irrelevant but we conclude were not prejudicial to the appellant.

The judgment is affirmed.